IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

RANGERS INTERNATIONAL FOOTBALL
CLUB PLC, a Scottish public limited
company,

    *Plaintiff*,

v.

KRF CAPITAL, LLC, *d/b/a* K SPORTS
CAPITAL, Delaware limited liability
company,

    *Defendant*.

Case No.:

INJUNCTIVE RELIEF REQUESTED

/

# COMPLAINT

Plaintiff Rangers International Football Club PLC ("Rangers"), by and through its attorneys, sues Defendant KRF Capital, LLC *d/b/a* K Sports Capital ("KRF Capital" or "Defendant"), and hereby alleges as follows:

## I.
## Preliminary Statement

1. This is an action for infringement of Rangers' federally registered trademarks under Section 32 of the Lanham Act, and for trade dress violation and false designation of origin under Section 42 of the Lanham Act. Rangers seek permanent injunctive and monetary relief.

2. Rangers, a Scottish football club, is not for sale. Yet, Rangers has learned that Defendant has, without Rangers' authorization, been approaching and actively soliciting potential "investors" and Rangers' current corporate clients pitching an opportunity—that does not exist— to purchase an ownership interest in Rangers. Defendant is doing so without Rangers' consent,

and in its materials is unlawfully using Rangers' trademarks and branding. Rangers seeks injunctive relief and damages from this Court as a result of the harm that Defendant has inflicted and will continue to inflict on Rangers and its business relationships, goodwill, and reputation.

## II.
## Parties

3. Rangers is a Scottish public limited company with its principal place of business in Glasgow, Scotland.

4. KRF Capital is a Delaware limited liability company with its principal place of business in Miami, Florida. KRF Capital is registered to transact business in Florida under the name "K Sports Capital."

## III.
## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), as the action involves federal questions and trademark claims under the Lanham Act.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because the claims arise out of incidents occurring in this judicial district, and because Defendant conducts business in this judicial district.

## IV.
## Factual Background

*A.*   *Rangers F.C.*

7. Founded in 1872 and based in Glasgow, Scotland, Rangers is a Scottish professional football club that plays in the Scottish Premiership, the top division of the Scottish Professional Football League, the league competition for men's professional football clubs in

Scotland.[1] Rangers is the most successful club in Scottish football, having won the Scottish League title 55 times, the Scottish Cup 34 times, and the Scottish League Cup 27 times.[2] With more than 600 Rangers supporters' clubs in 35 countries worldwide, Rangers has one of the largest fan bases in world football.[3]

8. As a public limited company—similar entities in the U.S. are called publicly traded companies—Rangers' ownership shares may be freely sold and traded to the public.[4]

B.  *KRF Capital*

9. KRF Capital was registered to transact business in Florida on June 8, 2022 under the name "K Sports Capital."[5] KRF Capital holds itself out as "a leading global independent advisory firm who provides innovative, strategic advice to a diverse client base."[6] KRF Capital also holds itself out as an investment advisory firm that "***work[s] closely with*** [their] ***clients*** to achieve their strategic goals . . . ."[7]

10. Kyle Fox, a partner at KRF Capital, has allegedly "worked in capital markets for over 17 years [and] led over $75bn of debt and equity transactions globally."[8] Fox is also the Authorized Person, Authorized Officer, and Registered Agent for KRF Capital.[9]

C.  *KRF Capital Approaches Rangers with an Investment Offer*

11. In June of 2022, John Bennett ("Bennett"), a shareholder in Rangers and its Vice

---

[1] Exhibit A, Declaration of Graeme Park ("Park Declaration") at ¶ 2.
[2] Exhibit A (Park Decl.) at ¶ 2.
[3] Exhibit A (Park Decl.) at ¶ 2.
[4] Exhibit A (Park Decl.) at ¶ 3.
[5] Exhibit B (Florida Division of Corporations Application by Foreign Limited Liability Company for Authorization to Transact Business in Florida).
[6] KRF Capital, *About Us*, www.krfcap.com/about-us/ (last visited Aug. 14, 2022).
[7] *Id*. (emphasis added).
[8] *Id*.
[9] Exhibit B (Florida Division of Corporations Application by Foreign Limited Liability Company for Authorization to Transact Business in Florida).

Chairman, was introduced via email to Fox, the founding partner of KRF Capital.[10] In her opening note, Fox introduced KRF Capital as an "[i]ndependent [s]ponsor who is focused on acquiring sporting assets and converging it with layering in technology to create new scalable revenue streams."[11] Fox stated that KRF Capital was "very interested in the opportunity to acquire at least 75% of [Rangers]" and sought to commence the due diligence process for the potential investment.[12] Fox also included a formal "Indication of Interest" letter with her opening note.[13]

12. After conferring with colleagues, Bennett rejected KRF Capital's offer a few days later, confirming that there was "no appetite to take the proposal further."[14] Fox responded, asking to set up a call to discuss the possibility of a counterproposal.[15]

13. In the following weeks, Bennett and Fox met in London to discuss the investment offer.[16] Following this meeting, in early July, KRF Capital sent Bennett a revised offer to "acquire a minimum of 25%+ of [Rangers]."[17] Fox included a second "Indication of Interest" letter with KRF Capital's revised offer.[18]

14. In the following weeks, KRF Capital also sent Bennett a three-page presentation deck—called an "Investment Teaser"—outlining "an opportunity to partner and co-invest to acquire at minimum 25%-30% of the club with a view to further acquire additional ownership overtime."[19] The Investment Teaser states that "exiting and remaining owners are keen to bring on

---

[10] Ex. 1 to Park Decl. (June 2, 2022 Email Exchange Between John Bennett and Kyle Fox).
[11] Ex. 1 to Park Decl. (June 2, 2022 Email Exchange Between John Bennett and Kyle Fox).
[12] Ex. 1 to Park Decl. (June 2, 2022 Email Exchange Between John Bennett and Kyle Fox).
[13] Ex. 2 to Park Decl. (June 1, 2022 Indication of Interest Letter from KRF Capital to Rangers).
[14] Exhibit A (Park Decl.) at ¶ 6; Ex. 3 to Park Decl. (June 5-6, 2022 Email Exchange Between John Bennett and Kyle Fox).
[15] Ex. 3 to Park Decl. (June 5-6, 2022 Email Exchange Between John Bennett and Kyle Fox).
[16] Exhibit A (Park Decl.) at ¶ 7.
[17] Ex. 4 to Park Decl. (June 5-6, 2022 Email Exchange Between John Bennett and Kyle Fox).
[18] Ex. 5 to Park Decl. (July 4, 2022 Indication of Interest Letter from KRF Capital to Rangers).
[19] Exhibit A (Park Decl.) at ¶ 9; Ex. 6 to Park Decl. (Investment Teaser).

board a strategic investor" in "One of the Oldest and Most Iconic Football Clubs in the World."[20] While the Investment Teaser does not name Rangers, it references the team's "50,000 person stadium" and "55 Scottish League title, [and] 33 Scottish Cups."[21]

15. In late July, Bennett rejected KRF Capital's offer again, noting that "the board of [Rangers] considers that it already has access to the resources and skills required to execute its business plan."[22]

16. At this point, Rangers considered its discussions with KRF Capital to have concluded.[23]

D. *KRF Capital Ignores the Fact That Rangers Rejected the Investment Offer*

17. On July 26, 2022, it came to the attention of several members of Rangers' board of directors that KRF Capital had created and was circulating a new, lengthier, and decidedly *un*authorized confidential information memorandum soliciting "new ownership" in Rangers on behalf of its current owners (the "Investor Deck").[24] The Investor Deck contains Rangers' branding and trademarked proprietary material—intellectual property that KRF Capital was never authorized to use.[25]

18. The Investor Deck also contains numerous false statements, including, but not limited to:

- "Current owners are looking to sell to new ownership who has the expertise in digital, media, and technology to scale existing and new revenue streams."[26]

---

[20] Ex. 6 to Park Decl. (Investment Teaser).
[21] Ex. 6 to Park Decl. (Investment Teaser).
[22] Exhibit A (Park Decl.) at ¶ 10; Ex. 7 to Park Decl. (July 26, 2022 Email Exchange Between John Bennett and Kyle Fox).
[23] Exhibit A (Park Decl.) at ¶ 11.
[24] Exhibit A (Park Decl.) at ¶ 12; Ex. 8 to Park Decl. (July 27, 2022 Email Exchange Between John Bennett and Graeme Park).
[25] Exhibit A (Park Decl.) at ¶¶ 13-14; Ex. 9 to Park Decl. (Investor Deck).
[26] Exhibit A (Park Decl.) at ¶ 15; Ex. 9 to Park Decl. (Investor Deck).

- "Rare opportunity to acquire a controlling stake in a Championship-level team at an extremely reasonable purchase price."[27]

19. The Investor Deck also uses many of Rangers' brand assets, including crests and photographs.[28] Defendant created this Investor Deck with the intent to trick any reader into thinking that: (1) Rangers is for sale; (2) Rangers is working with KRF Capital to sell a controlling stake in the enterprise; and (3) Rangers authorized this offer and presentation.[29] For example, Rangers' "Ready Crest" appears on every single page of the Investor Deck:[30]



20. Rangers owns all rights, title, and interest in the Ready Crest mark, as well as the "Scroll Crest" mark that also appears in the Investor Deck (together, the "Marks").[31] The Scroll Crest, representing the letters 'R,' 'F,' and 'C,' overlapping, has been used since the team's formation in 1872, and worn by the players since 1968.[32] The Ready Crest, in one form or another, has been used by the team since 1959, and features a lion rampant and the club's motto, "Ready," which was shortened from "Aye Ready" (meaning "Always Ready" in the Scots language).[33]

---

[27] Exhibit A (Park Decl.) at ¶ 15; Ex. 9 to Park Decl. (Investor Deck).
[28] Exhibit A (Park Decl.) at ¶ 16; Ex. 9 to Park Decl. (Investor Deck).
[29] Exhibit A (Park Decl.) at ¶ 16; Ex. 9 to Park Decl. (Investor Deck).
[30] Exhibit A (Park Decl.) at ¶ 17; Ex. 9 to Park Decl. (Investor Deck).
[31] Exhibit A (Park Decl.) at ¶ 18; Ex. 9 to Park Decl. (Investor Deck).
[32] Exhibit A (Park Decl.) at ¶ 18.
[33] Exhibit A (Park Decl.) at ¶ 19; Ex. 10 to Park Decl. (Branding Guidelines).

21. The Ready Crest is properly used by Rangers in connection with the design, marketing, and distribution of various high-quality goods, merchandise, and promotional material.[34] The Scroll Crest appears on the team's kits.[35] Both Marks are registered with the U.S. Patent and Trademark Office.[36]

 

22. Rangers' Marks are symbols of the team's excellence, innovation, determination, and unity, and Rangers has spent substantial time and money developing and advertising the team's Marks.[37] The Marks have never been abandoned.[38] Rangers has strict guidelines regarding the manner and contexts in which the team's brand assets are used, and has extensively promoted the Marks around the world while carefully monitoring and policing their use.[39]

23. KRF Capital does not have, nor has it ever had, the right or authority to use Rangers' Marks for any purpose, including in the Investor Deck.[40] KRF Capital had full knowledge of Rangers' ownership in the Marks, including Rangers' exclusive right to use and license the

---

[34] Exhibit A (Park Decl.) at ¶ 20.
[35] Exhibit A (Park Decl.) at ¶ 20.
[36] RANGERS FOOTBALL CLUB READY, Registration No. 3038798; RANGERS FOOTBALL CLUB READY, Registration No. 6641604; RFC, Registration No. 1851968; RFC, Registration No. 2956448.
[37] Exhibit A (Park Decl.) at ¶¶ 21-22.
[38] Exhibit A (Park Decl.) at ¶ 22.
[39] Exhibit A (Park Decl.) at ¶ 22.
[40] Exhibit A (Park Decl.) at ¶ 23.

intellectual property and the associated goodwill.[41] Despite its known lack of authority to do so, KRF Capital is infringing on Rangers' Marks.[42] By falsely representing facts and copying Rangers' Marks, KRF Capital has created a false association between themselves, their fraudulent Investor Deck, and Rangers.[43] Such infringement and false association are in violation of 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and are causing and will continue to cause Rangers irreparable harm.

E.  *KRF Capital Ignores Rangers' Cease-and-Desist Letter*

24. Rangers also learned that KRF Capital has been meeting with and presenting to Rangers' corporate clients on the purported basis that the sale of equity in Rangers has been endorsed by the club's board of directors.[44] This is false.[45] Rangers has not given KRF Capital authorization to meet with its corporate clients, or anyone else for that matter.[46]

25. On August 5th, U.S. counsel for Rangers sent Fox and KRF Capital a cease-and-desist letter via certified mail, return receipt requested, and first-class mail, urging them to stop engaging in any communications related to alleged investment opportunities in Rangers, as well as to immediately stop using Rangers' intellectual property.[47] With the notice letter, Rangers also sought to understand the extent of KRF Capital's actions, asking for a list of parties to whom the unauthorized communications had already been made.[48]

26. Undeterred and unresponsive, on August 8th, after receiving the cease-and-desist

---

[41] Exhibit A (Park Decl.) at ¶ 24.
[42] Exhibit A (Park Decl.) at ¶ 24.
[43] Exhibit A (Park Decl.) at ¶ 24.
[44] Exhibit A (Park Decl.) at ¶ 25.
[45] Exhibit A (Park Decl.) at ¶ 25.
[46] Exhibit A (Park Decl.) at ¶ 25.
[47] Exhibit A (Park Decl.) at ¶ 27; Ex. 11 to Park Decl. (August 5, 2022 Cease-and-Desist Letter from Foley & Lardner to Kyle Fox and KRF Capital).
[48] Exhibit A (Park Decl.) at ¶ 28; Ex. 11 to Park Decl. (August 5, 2022 Cease-and-Desist Letter from Foley & Lardner to Kyle Fox and KRF Capital).

letter sent on Rangers' behalf, KRF Capital sent five identical emails to partners at a <u>European Investment Firm</u>[49] that invests in European infrastructure assets.[50] In her emails, Fox, on behalf of KRF Capital, invites each partner to join an "investor group that is acquiring a plurality ownership of a first division football team in Scotland. Ownership will be obtained directly from key owners with whom we are in exclusive conversations."[51] None of these statements were or are true.[52]

27. Several of the European Investment Firm partners believed the email to be genuine, forwarding the message on to a fellow partner and noting, for example, "This has your name written all over it!! Let me know if you invest!" and, "This is for Rangers!!! Are you behind it?!?"[53] One of the five partners, the recipient of these forwarding messages, brought the email to the attention of Rangers, wondering if the team "[was] aware that this was going on or not."[54]

28. As stated earlier, Rangers is not for sale.[55] But KRF Capital has been meeting with, presenting, and soliciting Rangers' corporate clients on the purported basis that the *fake* sale of equity in the club has been endorsed by Rangers' board.[56] This is untrue, as neither KRF Capital nor Fox have received any authorization from Rangers to meet with the team's corporate clients.[57] The presentation of this entirely misleading information is has the potential to cause significant damage to Rangers' reputation, as it could lead to considerable disruption both within Rangers and

---

[49] In order to protect the privacy of the firm and the partners, the name of the European Investment Firm has been anonymized, and all personal identifying information in the referenced emails has been redacted.
[50] Exhibit A (Park Decl.) at ¶ 29; Ex. 12 to Park Decl. (August 8, 2022 Emails from Kyle Fox to European Investment Firm).
[51] Exhibit A (Park Decl.) at ¶ 30; Ex. 12 to Park Decl. (August 8, 2022 Emails from Kyle Fox to European Investment Firm).
[52] Exhibit A (Park Decl.) at ¶ 30; Ex. 12 to Park Decl. (August 8, 2022 Emails from Kyle Fox to European Investment Firm).
[53] Exhibit A (Park Decl.) at ¶ 31; Ex. 12 to Park Decl. (August 8, 2022 Emails from Kyle Fox to European Investment Firm).
[54] Exhibit A (Park Decl.) at ¶ 32; Ex. 13 to Park Decl. (August 8, 2022 Email Exchange Between European Investment Firm and Rangers).
[55] Exhibit A (Park Decl.) at ¶ 33.
[56] Exhibit A (Park Decl.) at ¶ 33.
[57] Exhibit A (Park Decl.) at ¶ 33.

among the team's fan base.[58] Moreover, the Investor Deck that KRF Capital has been using in these unauthorized meetings—besides containing baseless and inaccurate statements—contains multiple instances of Rangers' branding and trademarked proprietary material.[59] KRF Capital was never given permission to use Rangers' Marks or anything else.[60] KRF Capital is breaching Rangers intellectual property rights.[61]

## V.
## Claims for Relief

<u>Count I: Federal Trademark Infringement Pursuant to Section 32 of the Lanham Act</u>

29. Rangers hereby re-allege and incorporate by reference the allegations contained in Paragraphs 1–28 as if fully set forth herein.

30. Rangers' Marks are valid marks entitled to protection under the Lanham Act, 15 U.S.C. § 1114. Rangers owns the Marks. Defendant's use of the Marks is unauthorized, and has caused and will continue to cause confusion in the minds of the public. Defendant's unauthorized use of the Marks has also created a false association between Defendant and Rangers. Relevant consumers—including the partners at the European Investment Firm—have been mistaken or confused as to the legitimacy of the connection (and lack thereof) between Defendant and Rangers.

31. Defendant's acts constitute trademark infringement in violation of 15 U.S.C. § 1114.

32. Defendant committed the foregoing acts of infringement with full knowledge of Rangers' prior rights in the Marks, and with the willful intent to cause confusion and to trade on Rangers' goodwill.

---

[58] Exhibit A (Park Decl.) at ¶ 34.
[59] Exhibit A (Park Decl.) at ¶ 35.
[60] Exhibit A (Park Decl.) at ¶ 23.
[61] Exhibit A (Park Decl.) at ¶ 36.

33. As a direct and proximate result of Defendant's wrongful acts, Rangers has suffered and will continue to suffer damage to its business reputation and goodwill. Defendant's conduct is causing immediate and irreparable harm and injury to Rangers, and such injury will continue unless Defendant is enjoined by this Court. Rangers has no adequate remedy at law.

**Wherefore,** Rangers are entitled to temporary and permanent injunctive relief as provided by 15 U.S.C. § 1116 and damages pursuant to 15 U.S.C. § 1117, including Defendant's profits, treble damages, reasonable attorney's fees, costs, statutory damages, and/or prejudgment interest, and any and all other legal or equitable relief the Court deems just and proper.

Count II: Violations of Section 43 of the Lanham Act

34. Rangers hereby re-allege and incorporate by reference the allegations contained in Paragraphs 1–28 as if fully set forth herein.

35. The total image and overall appearance of the Investor Deck, including its use of Rangers' colors, color combinations, texture, and graphics constitute trademark infringement, trade dress violation, false designation of origin, false or misleading description of fact, and false or misleading representation of fact in violation of 15 U.S.C. § 1125(a).

36. Defendant's use of the Marks is unauthorized and has and will continue to deceive consumers as to the origin and affiliation of Defendant's services. Defendant's actions have and will continue to cause consumers to believe, contrary to fact, that Defendant's services are endorsed or sponsored by Rangers, or that Defendant is in some way affiliated with Rangers. The public—including the partners at the European Investment Firm—has already been mistaken as to the approval of the Investor Deck and of a connection between Defendant and Rangers.

37. Defendant's unauthorized use in commerce of the Marks, as well as their fraudulent misrepresentations regarding the fake investment opportunity in Rangers, constitute a trade dress

violation, use of a false designation of origin, and misleading description and representation of fact.

38. Defendant's acts were intended to and are likely to cause confusion, mistake, or deception as to the affiliation of Defendant with Rangers.

39. As a direct and proximate result of Defendant's wrongful acts, Rangers has suffered and will continue to suffer damage to their business reputation and goodwill. Defendant's conduct is causing immediate and irreparable harm and injury to Rangers, and such injury will continue unless Defendant is enjoined by this Court. Rangers has no adequate remedy at law.

**Wherefore,** Rangers is entitled to temporary and permanent injunctive relief as provided by 15 U.S.C. § 1116 and damages pursuant to 15 U.S.C. § 1117, including Defendant's profits, treble damages, reasonable attorney's fees, costs, statutory damages, and/or prejudgment interest, and any and all other legal or equitable relief the Court deems just and proper.

## VI.
## Prayer for Relief

WHEREFORE, Rangers respectfully requests that the Court enter a judgment:

(a) Temporarily, and upon final hearing permanently, enjoining Defendant, and all persons or entities acting in concert or participation with it, from using, advertising, marketing, or soliciting investment in any service under any mark, name, symbol, logo, or other indicia that incorporates or is confusingly similar to Rangers' Marks and Trade Dress;

(b) Directing Defendant, and all persons or entities acting in concert or participation with it, to immediately deliver to Rangers all advertisements, literature, labels, and any other promotional and marketing materials which bear Rangers' Marks, any other mark confusingly similar to Rangers' Marks;

(c) Directing, pursuant to 15 U.S.C. § 1116(a), Defendant to file with the Court and serve upon Rangers' counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith;

(d) Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any services sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Rangers;

(e) For an award of Defendant's profits and Rangers' damages in an amount to be proven at trial for trademark infringement under 15 U.S.C. § 1114(a);

(f) For an award of Defendant's profits and Rangers' damages in an amount to be proven at trial for trade dress violation and false designation of origin under 15 U.S.C. § 1125(a);

(g) Awarding Rangers an amount up to three times the amount of their actual damages, in accordance with 15 U.S.C. § 1117(a);

(h) Declaring that this is an exceptional case pursuant to 15 U.S.C. § 1117(a), and awarding Rangers their costs, disbursements, and reasonable attorney's fees incurred in this action and such other relief as may be appropriate;

(i) Awarding Rangers interest, including prejudgment and post-judgment interest, on the foregoing sums;

(j) Granting such other and further relied that the Court deems proper.

Dated this 16th day of August, 2022.

Respectfully submitted,

*s/Roland Potts*
Roland Potts (FBN 87072)
rpotts@foley.com
Foley & Lardner LLP
2 South Biscayne Blvd, Suite 1900
Miami, Florida 33131
Phone:  305-482-8400
Fax:      305-482-8600

Craig D. Dillard
(Will seek admission *pro hac vice*)
cdillard@foley.com
Jason P. Sharp
(Will seek admission *pro hac vice*)
jsharp@foley.com
FOLEY & LARDNER LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002
Phone:  713-276-5500
Fax:      713-276-5555

*Attorneys for Plaintiff*
*Rangers International Football Club PLC*